IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES SIMPSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:11-CV-0487-D |
| VS. | § | |
| | § | |
| CONAGRA FOODS RETIREMENT | § | |
| INCOME SAVINGS PLAN, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by an ERISA[1] plan participant alleging that the plan and its administrative committee breached their duty of loyalty by failing to correctly execute his request to transfer part of his plan investments between funds and declining his requested remedy, the court must decide whether either side is entitled to summary judgment. Concluding that neither side has met its summary judgment burden, the court denies the cross-motions for summary judgment.

I

This is an action under ERISA § 502(a)(2) by plaintiff James Simpson ("Simpson") against defendants ConAgra Foods Retirement Income Savings Plans (the "Plan") and ConAgra Foods Employee Benefits Administrative Committee (the "Committee") for breach of fiduciary duty. The lawsuit stems from a transaction in which Simpson sought to transfer

---

[1]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

part of his Plan investments from a shorter-term fixed income fund to a large-cap growth stock fund, and from the Committee's denial of Simpson's request to credit his account for losses allegedly caused as a result.²

Simpson is a Plan participant. The Plan permits participants to change investments in their account in 1% increments among the Plan's investment funds. One option for effecting a transfer is by telephone, via EasyAccess ("EA"). In 2009 Simpson telephoned the EA representative to make a transfer. The following portion of the recorded exchange is pertinent:³

> Simpson: Ok, I want to move, uh, 60% of [my balance] into those large cap growth stock funds.
>
> EA representative: Out of 100%?
>
> Simpson: Mm hmm[.]
>
> EA representative: Ok, I processed your transaction as move shortage to 60% and do it to the longer term fix at a 100%.
>
> Simpson: Mmm hmm[.]

---

²"Where the background facts are undisputed, the court recounts them according to the summary judgment record developed through the parties' cross-motions." *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 2009 WL 3074618, at *1 n.4 (N.D. Tex. Mar. 30, 2009) (Fitzwater, C.J.), *appeal docketed*, 11-10649 (5th Cir. July 8, 2011). "Where the facts are materially disputed, the court recounts the evidence in a light favorable to the nonmovant on that issue and draws all reasonable inferences in favor of the nonmovant." *Id.* (citing *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 617 n.2 (N.D. Tex. 2007) (Fitzwater, J.)).

³Although the parties cite to transcripts that are not identical, the differences are immaterial. The court therefore quotes from a version that both sides submitted. *See* P. App. 66; Ds. App. 23.

> EA representative: Is that all the transactions you are looking to process today, sir?
>
> Simpson: Yes.

P. App. 66; Ds. App. 23. In response, the EA representative transferred 60% of Simpson's account to a longer term fixed income fund rather than to a large-cap growth fund. In other words, the EA representative transferred the funds in accordance with her responsive statement to Simpson rather than in accordance with Simpson's initial request.

After Simpson contacted defendants to inquire about the transaction, they sent him a recording of the conversation and informed him that the EA representative executed the transaction that she had read back to him and that he had confirmed. Defendants also informed Simpson of his right to file a claim with the Plan. Simpson then sent defendants a letter requesting that his account be credited $12,000 due to the EA representative's mistake.[4] The Committee denied Simpson's request and, in doing so, referenced the fact that

---

[4]Defendants treated Simpson's request as a benefits claim, but Simpson maintains that his claim is not for benefits but is instead a request to credit his account an amount he believes he is rightfully due. Because Simpson's initial request was not framed as a benefits claim and this suit is for breach of fiduciary duty under § 502(a)(2) rather than a benefits claim under § 502(a)(1)(B), the court will not treat Simpson's request as a benefits claim.
    Simpson could not have circumvented abuse of discretion review and the exhaustion requirements of § 502(a)(1)(B) by improperly characterizing a benefits claim as a breach of fiduciary duty claim under § 502(a)(2). But because the court must interpret ERISA rather than the Plan to decide this case, Simpson's claim is properly brought as a § 502(a)(2) breach of fiduciary duty claim. *See Galvan v. SBC Pension Benefit Plan*, 204 Fed. Appx. 335, 339 (5th Cir. 2006) (per curiam) (citing *D'Amico v. CBS Corp.*, 297 F.3d 287, 291 (3d Cir. 2002)) ("Fiduciary claims amount to benefits claims when 'resolution of the claims rests upon an interpretation and application of an ERISA-regulated plan rather than on an interpretation and application of ERISA[.]'").

he was making a trade very late in the trading day, speaking quickly, and had confirmed the trade as read back to him by the EA representative. The Committee also informed Simpson of his right to appeal the decision, which Simpson exercised through counsel. Simpson's appeal was also denied by the Committee, citing his confirmation of the EA representative's misstatement as the basis for the denial. Simpson then filed the instant suit alleging that defendants breached their fiduciary duty of loyalty under ERISA.

II

Because Simpson will have the burden of proof at trial on his breach of fiduciary duty claims, to obtain summary judgment he "must establish 'beyond peradventure all of the essential elements of the claim[s.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that Simpson must demonstrate that there are no genuine and material fact disputes and that he is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

Defendants cross-move for summary judgment. When parties moves for summary judgment on a claim for which the opposing party will bear the burden of proof at trial, the moving parties can meet their summary judgment obligation by pointing the court to the

absence of admissible evidence to support the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving parties do so, the opposing party must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing party's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the opposing party fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The parties dispute whether the Plan can be sued under § 502(a)(2) for breach of fiduciary duty. Defendants argue that any action under § 502(a)(2) must be brought on behalf of the Plan; thus the Plan cannot also be named as a defendant. *See, e.g., Mass. Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 144 (1985) ("[T]he entire text of § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself."); *Kling v. Fidelity Mgmt. Trust Co.*, 323 F.Supp.2d 132, 147-48 (D. Mass. 2004) (citing *Russell*, 473 U.S. at 144) ("The Plan cannot be both plaintiff and defendant in this action."); *Steinman v. Hicks*, 252 F.Supp.2d 746, 756 (C.D. Ill. 2003) (citing *Russell*, 473 U.S. at 144) (holding that defendant plan was entitled to summary judgment because "it cannot be named as a defendant in a suit in which it must be considered to be the plaintiff").

As plaintiff argues, however, the Supreme Court in *LaRue v. DeWolff, Boberg & Associates*, 552 U.S. 248 (2008), narrowed the holding of *Russell* to apply only to defined *benefit* plans, not defined *contribution* plans. The Court "held that § 502(a)(2) does authorize recovery for fiduciary breaches that impair the value of plan assets in a participants' individual account." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 376 (5th Cir. 2008) (internal quotation marks and citations omitted). Because the Plan is a defined *contribution* plan, *LaRue* applies, and the Plan is a proper defendant. *See id.* at 376 & n.11. The court therefore denies defendants' motion for summary judgment as to all claims asserted against the Plan.

IV

The court turns next to Simpson's breach of fiduciary duty claims.

"ERISA imposes on the employer-fiduciary . . . strict statutory duties, including loyalty, prudence, and diversification." *Kujanek v. Hous. Poly Bag I, Ltd.*, 658 F.3d 483, 487 (5th Cir. 2011) (internal quotations and citations omitted). Fiduciaries are required to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). An ERISA plan participant may bring a civil action to enforce such duties. *See id.* § 1132(a)(2). "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach[.]" *Id.* § 1109(a).

"To establish a claimed breach of fiduciary duty, an ERISA plaintiff must prove a breach of a fiduciary duty and a prima facie case of loss to the plan." *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995). "ERISA's duty of loyalty is the highest known to the law." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000) (internal quotation marks omitted). It requires fiduciaries to make "their decisions . . . with an eye single to the interests of the participants and beneficiaries." *Id.* at 298 (citations omitted). This standard "focuses . . . on the fiduciary's conduct." *Id.* Essentially, a fiduciary must deal fairly and honestly with plan participants and beneficiaries. *See Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996); *see also Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir. 1997) (describing duty of loyalty as an "obligation to deal fairly and honestly with all plan members").

The material facts are essentially undisputed,[5] but the parties disagree as to what those facts establish. Simpson maintains in his motion that defendants breached their fiduciary duty of loyalty in three distinct ways: first, by accepting the EA representative's version of the intended transaction over the version Simpson initially requested; second, by failing to follow Department of Labor regulations by relying on improper grounds for denying his claim and by not identifying the provisions in the Summary Plan Description ("SPD") relied on to deny his claim; and, third, by improperly asserting attorney-client privilege after Simpson requested disclosure of the legal opinions given to defendants by outside counsel

---

[5]To the extent Simpson argues that certain facts are genuinely disputed, the court holds that any factual discrepancies are immaterial to its decision.

regarding his claim.

Defendants seek summary judgment on the basis that they did not breach their fiduciary duty of loyalty because the EA representative followed Simpson's instructions. Defendants also contend that, because the Plan is a § 404(c) plan and Simpson was exercising control over his own account, § 404(c)(1)(A)(ii) exempts them from any loss created by a breach.

V

The court considers first Simpson's motion for summary judgment.

The evidence on which Simpson relies to demonstrate the first alleged breach of loyalty—that the Committee accepted the EA representative's version of the intended transaction over the version Simpson initially requested—does not establish beyond peradventure that defendants breached their duty of loyalty. The duty of loyalty, although the highest known in the law, does not require a plan fiduciary to accept the plan participant's version of the facts when, as here, there is substantial evidence to undercut that version. Rather, it requires a fiduciary to act fairly and honestly toward a plan participant. *See, e.g., Varity*, 516 U.S. at 506. Neither side disputes that the EA representative incorrectly restated Simpson's initial request. And neither side disputes that Simpson failed to correct the EA representative's misstatement, responding instead, "mmm-hmm." P App. 23. The Committee reviewed Simpson's claim, including the call transcript, and denied it. To prove that defendants breached their duty of loyalty, Simpson must establish that, in denying his claim, defendants did not address his claim honestly and fairly, or that they were denying his

claim to benefit themselves or a third party. *See, e.g., Christensen v. Qwest Pension Plan*, 462 F.3d 913, 917-18 (8th Cir. 2006) ("A mistake in the administration of a pension plan is not a violation of the duty of loyalty absent evidence that plan administrators acted in the interests of someone other than participants and beneficiaries."). At the summary judgment stage, because he is moving for summary judgment on a claim for which he will have the burden of proof at trial, he must make this showing beyond peradventure. Because he essentially relies on nothing more than the fact that his request for compensation was denied, he has not met this burden.

To the extent that Simpson argues the Committee breached its duty of loyalty by relying on impermissible factors in denying his claim, he has failed to establish beyond peradventure that the duty of loyalty was breached.[6] Simpson argues that because the Committee referenced factors that should not be considered when assessing his request—such as his speaking fast, his frequent trading, his history of trading late in the day, and the fact that he is not a current employee but is a deferred vested participant in the Plan—the Committee breached its duty of loyalty. This evidence does not establish beyond peradventure, however, that the Committee relied on these factors in denying his claim. Viewed in the light most favorable to defendants as the summary judgment nonmovants with

---

[6]Defendants contend that the court cannot consider Simpson's theories of breach of fiduciary duty that were not raised in the complaint. But the cases on which they rely conclude that entirely new *claims* cannot be added. Simpson has not added new *claims* in his motion for summary judgment; instead, he is asserting that defendants committed multiple acts that constitute grounds for a single claim for breach of fiduciary duty.

regard to Simpson's motion, the Committee's references to such factors could simply have been part of its assessment of background information used to place Simpson's claim in context, or relied upon to help it determine who was at fault in executing the transaction.[7] Moreover, the Committee made clear that it was denying Simpson's appeal based solely on his confirmation of the transaction as the EA representative restated it to him. The court therefore concludes that Simpson has not established beyond peradventure that the Committee breached its duty of loyalty by relying on impermissible factors in deciding his claim.

Finally, Simpson argues that defendants breached their duty of loyalty by not identifying the Plan provisions on which they relied to deny his claim and by improperly asserting the attorney-client privilege when Simpson's counsel requested to see the opinion of defendants' outside counsel. Assuming *arguendo* that such actions are breaches of the duty of loyalty, Simpson has not established beyond peradventure that any such breach caused the loss on which he relies. *See McDonald*, 60 F.3d at 237 (holding no breach of fiduciary duty due to lack of causal link between breach and loss to plan).

Simpson's motion for summary judgment is therefore denied. Because the court is denying Simpson's motion for summary judgment on his breach of fiduciary duty claim, the court also denies his motion for attorney fees under § 502(g)(1).

---

[7]For example, if someone was speaking fast, this could confuse the EA representative. And if someone was trading late in the day, there could be pressure to complete the trade before a trading deadline, thus contributing to how each participant in the call conducted himself or herself. Consideration of such factors could be quite sensible.

## VI

The court turns next to defendants' motion for summary judgment.

Defendants first argue that they are entitled to summary judgment because the EA representative followed Simpson's instructions, and the Committee did not breach its fiduciary duty when it denied Simpson's request to credit his account. Viewed in the light most favorable to Simpson, however, the evidence would enable a reasonable trier of fact to find that, in denying his claim, the Committee considered factors that were not relevant to the merits of Simpson's claim, such as his status as a non-employee plan participant.

Defendants also rely on the affirmative defense that Simpson was exercising control over his account pursuant to § 404(c). *See Pfeil v. State Street Bank & Trust Co.*, 671 F.3d 585, 598 (6th Cir. 2012) ("Section 404(c) is an affirmative defense."). Simpson responds that he was no longer exercising control over his account once the EA representative misstated his requested transaction.

The safe harbor provided by § 404(c) is meant to protect fiduciaries from liability "for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104(c)(1)(A)(ii). The alleged breach of the fiduciary duty of loyalty—the Committee's reliance on impermissible factors in denying Simpson's claim—could not have resulted from Simpson's exercise of control over the account. The § 404(c) safe harbor shields fiduciaries from liability for losses in cases when, for example, a participant decides to invest all his assets in one fund rather than splitting his assets among multiple funds; it was not meant to protect fiduciaries from liability for breaching their duty

of loyalty in reviewing and denying a beneficiary's request to credit his account. *See Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 309 (5th Cir. 2007) ("[Section 404(c)] places responsibility for the success or failure of a participant's investments on his own choices among the portfolio offered in the plan."); *Howell v. Motorola, Inc.*, 633 F.3d 552, 567 (7th Cir. 2011) ("The language used throughout section 404(c) thus creates a safe harbor only with respect to decisions that the participant can make.").

Accordingly, defendants are not entitled to summary judgment based on § 404(c). And even if it appeared that this affirmative defense were available in the context of this case, defendants would be required to establish the defense beyond peradventure. *See, e.g., State Farm Fire & Cas. Co. v. Whirlpool Corp.*, 2011 WL 3567466, at *4 n.2 (N.D. Tex. Aug. 15, 2011) (Fitzwater, C.J.) (quoting *Bank One*, 878 F. Supp. at 962) (holding that party relying on affirmative defense to obtain summary judgment must satisfy beyond peradventure standard). Because they cannot do so, their motion is denied.

*  *  *

For the reasons explained, the court denies the parties' cross-motions for summary judgment.

**SO ORDERED.**

April 13, 2012.

*[signature]*
SIDNEY A. FITZWATER
CHIEF JUDGE